UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAUN CARPENTER,                    )
                    Plaintiff,                    )
v.                    )                    No. 1:18-cv-1316
                    )
                    )                    Honorable Paul L. Maloney
COUNTY OF MANISTEE, ET AL.                    )
                    Defendant.                    )
                    )

## OPINION

This matter is before the Court on Defendants' motion for summary judgment (ECF No. 33). For the reasons to be explained, the motion will be granted in part and denied in part.

## I.

This case arises out of an altercation between Plaintiff Shaun Carpenter and Defendant Sheriff Deputy Blake Fitch, who was employed by Defendant Manistee County. On August 8, 2017, Plaintiff was engaged in protesting various government actions on a public sidewalk outside of the Vogue Theater in downtown Manistee, Michigan. He claims that he was holding a sign and educating people about the "Shaun William Carpenter Corporation Foundation" by asking passersby if they had time to learn about his "foundation." Plaintiff asserts that if they said yes, he would talk to them for a few minutes, and if they said no, he would move on.

When Plaintiff was talking to one woman, he asserts that she became annoyed with him and went into the Vogue Theater to complain. An employee of the theater subsequently

asked Plaintiff to relocate, so he moved across the street to another public sidewalk outside PNC Bank. Meanwhile, Manistee County Central Dispatch received a report about a person "harassing people, waving a sign, and yelling in downtown Manistee near the Vogue Theater" (ECF No. 34 at PageID.121). Defendant Deputy Fitch was then dispatched to the Vogue Theater to investigate. When he arrived at the scene, Deputy Fitch observed Plaintiff standing next to the PNC Bank building and fold up his sign and place it in his backpack.

Deputy Fitch approached Plaintiff, and the following exchange, which was recorded on Deputy Fitch's body camera, occurred:

Fitch: "Hey bud."

Plaintiff: "What's up."

Fitch: "Well, we got a complaint about ya . . . that you're harassing patrons . . ."

Plaintiff: "I was publishing my views freely."

Fitch: "Well you can publish your views freely but when they disturb the peace and harmony of others then . . ."

Plaintiff: "Who's . . . who's the complainant?"

Fitch: "The Vogue Theater."

Plaintiff: "Okay they asked me to move from in front of their theater, so I came over here."

Fitch: "Where do you live at?"

Plaintiff: "I live here in town."

Fitch: "Do you? Do you have an ID?"

Plaintiff: "No."

Fitch: "What's your first name?"

2

Plaintiff: "I don't have a name for you, I mean am I committing a crime? Am I violating law?"

Fitch: "Believe it or not, there is a Michigan law that you are required to identify yourself upon demand of a peace officer, okay? I'm a peace officer, I'm asking you to identify yourself. I gotta make sure you're not wanted for anything and stuff like that. So I need your name."

Plaintiff: "I don't have a name for you."

Fitch: "Well then you go to jail."

Plaintiff: "That's a violation of my rights."

Fitch: "No! Until I can properly identify you, you will be held. Which means that I'll get fingerprints for you, they'll send 'em off and then in a while, we'll get a report back and they'll tell us who you are. Why don't you just give me your name and we'll be done with this? And I'll say be on your merry way."

(*Exhibit 1: Body Cam Footage from Defendant Fitch*, ECF No. 36-2 at 0:00-1:32). The conversation continued, and Deputy Fitch told Plaintiff he was being disorderly and continually gave Plaintiff the choice of producing his ID or going to jail. *Id.*

Plaintiff eventually told Deputy Fitch to get a warrant if he wanted to see Plaintiff's ID. Deputy Fitch then responded, "I don't have to get a warrant. It's called search incident to an arrest. I'm arresting you for failure to identify." *Id.* at 2:29-2:36. The parties then had another exchange where Deputy Fitch told Plaintiff that he was "required by state law to identify yourself when I ask," to which Plaintiff claimed multiple times was incorrect. *Id.* at 2:41-3:05.

At that point, Deputy Fitch sounded to be agitated, and said "Alright let's go." *Id.* at 3:07. The camera footage then shows Deputy Fitch grab Plaintiff's arm and direct him toward the wall of the bank. The parties then got into a slight physical altercation where Plaintiff

3

appeared to resist Deputy Fitch's attempt to put handcuffs on Plaintiff. Plaintiff verbally resisted by stating multiple times that "this is an unlawful arrest," *id.* at 3:08, 3:14, 3:30, so Deputy Fitch called for backup while trying to remove Plaintiff's backpack. The struggle continued, and Plaintiff yelled "I'm scared! This guy has a gun! He's trying to steal my property!" *Id.* at 3:35-3:38. The struggle then escalated and Deputy Fitch put Plaintiff in a brief chokehold. *See id.* at 3:40-3:48. Deputy Fitch continued to struggle putting handcuffs on Plaintiff, so he kicked Plaintiff in the back of the leg, which caused Plaintiff to fall to the ground. *See id.* at 3:55-4:00. Deputy Fitch then climbed on top of Plaintiff while Plaintiff was lying on his stomach, and Deputy Fitch sat on Plaintiff while he fastened the handcuffs.

While Deputy Fitch was on top of Plaintiff and had already fastened the handcuffs, additional officers arrived at the scene. Deputy Fitch continued to sit on Plaintiff, even though Plaintiff had been subdued, he appeared to be in physical pain, and other officers had arrived to assist Deputy Fitch. Plaintiff then complained about Deputy Fitch "going through [his] pockets," and Deputy Fitch stated that he was "trying to identify [Plaintiff]!" *Id.* at 4:38-4:43. Deputy Fitch then continued, "All you had to do was show me your ID, ya dumbass." *Id.* at 4:51-4:54. At that point, Deputy Fitch retrieved Plaintiff's ID from his pocket and continued to sit on top of him.

For the next four minutes, Deputy Fitch remained on top of Plaintiff, while Plaintiff stated that he was not resisting. Deputy Fitch disagreed and stated that Plaintiff was resisting every time he moved. *See id.* at 5:44-5:47. Plaintiff then asked what Deputy Fitch's probable cause was, to which he responded, "My probable cause is that I asked you to identify yourself . . . and you were being disorderly." *Id.* at 6:23-6:31. Eventually, Deputy Fitch got

4

up and escorted Plaintiff to his squad car. Plaintiff appeared to be limping, so an officer asked if his leg was hurt. Plaintiff stated multiple times while Deputy Fitch was on top of him that he was in pain, and he reiterated that he was hurt while he was escorted to the squad car. Deputy Fitch searched Plaintiff's pockets one more time before placing him in the car.

Plaintiff was then transported to Munson Manistee Hospital where doctors determined that he had a fractured tibia, which was likely caused by Deputy Fitch kicking Plaintiff in the knee (*see* ECF No. 36-4). Deputy Fitch also received medical treatment for a bruised knee, bruised leg, and possible rotator cuff injury. After treatment, Plaintiff was then taken to the Manistee County Jail, but the county prosecuting attorney declined to prosecute. After reviewing the charges and evidence, the prosecutor's office dismissed all charges "in the interest of justice" (ECF No. 36-5). Plaintiff then filed the present matter alleging unreasonable seizure, arrest, and detention in violation of the Fourth and Fourteenth Amendments; excessive force in violation of the Fourth and Fourteenth Amendments; and a violation of Plaintiff's free speech and protest rights under the First and Fourteenth Amendments against state actor Defendant Fitch (ECF No. 1 at PageID.7).[1] Additionally, Plaintiff alleges a *Monell* violation against Defendant Manistee County for the unconstitutional policy of "arresting citizens who refused to provide identification to deputy sheriffs even when the arrested citizens were not being lawfully detained" (ECF No. 1 at PageID.8).

---

[1] The Court notes that Plaintiff did not plead these Constitutional violations by a state actor through 42 U.S.C. § 1983, but Defendants never filed a motion to dismiss.

## II.

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out an absence of evidence supporting the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the moving party has carried its burden, the nonmoving party must set forth specific facts, supported by evidence in the record, showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252. The function of the district court "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Resolution Trust Corp. v. Myers*, 9 F.3d 1548 (6th Cir. 1993) (unpublished table opinion) (citing *Anderson*, 477 U.S. at 249).

However, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini v. Oberlin*

*College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994)) (quotation marks omitted). A mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734–35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). Accordingly, the non-moving party "may not rest upon [his] mere allegations," but must instead present "specific facts showing that there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)) (quotation marks omitted). In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.

### A. Count I: Constitutional Violations by Defendant Fitch

#### 1. Unlawful Arrest

Plaintiff first alleges unlawful arrest under the Fourth Amendment for an unreasonable seizure. The Fourth Amendment, applied to the states through the Fourteenth Amendment, gives persons the right to be secure in their homes, papers, and effects against unreasonable searches and seizures. U.S. Const. amend. IV. A seizure occurs when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). An unlawful arrest constitutes an unreasonable seizure in violation of the Fourth Amendment. *See, e.g.*, *Wallace v. Kato*, 549 U.S. 384 (2007).

Unlawful arrest claims, also known as "false arrest," are analyzed under state law. *See e.g., Chesney v. City of Jackson*, 171 F. Supp. 3d 605, 633 (E.D. Mich. 2016); *Devoe v. Rebant*, No. 05-71863, 2001 WL 334297, at *3 (E.D. Mich. Feb. 13, 2006). Under Michigan law, a plaintiff bringing a false arrest clam has the burden to establish that "(1) he was arrested by the defendant(s), (2) he was aware of his arrest, (3) the arrest was against his will, (4) the defendant(s) acted intentionally, and (5) the arrest was illegal." *Whipple v. Girard*, No. 298837, 2011 WL 3117870, at *1 (Mich. Ct. App. July 26, 2011). Additionally, an "arrest without probable cause violates the Fourth Amendment." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001).

In the present matter, it is undisputed that the first four elements of a false arrest claim under Michigan law are met; but it is disputed whether the arrest was illegal and whether there was probable cause for the arrest.

Plaintiff claims he was unlawfully arrested because Deputy Fitch stated multiple times during their altercation that Plaintiff was under arrest for "failure to identify." Based on the body camera footage, Deputy Fitch appeared to be under the incorrect impression that Michigan law requires a person to produce a form of identification upon the request of an officer. However, there is no such Michigan law. *See Combs v. City of Birmingham*, No. 12-14528, 2013 WL 4670699, at *1 (E.D. Mich. Aug. 30, 2013) ("Michigan is not among the 25 states with a law requiring citizens to provide identifying information to police officers during a lawful *Terry* stop.") (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). On the other hand, Deputy Fitch claims that Michigan law does require a person to produce his or her identification upon an officer's request under Mich. Comp. Laws § 257.311. This statute

states that the licensee of a driver's license "shall have his or her operator's or chauffer's license . . . in his or her immediate possession at all times *when operating a motor vehicle*, and shall display the same upon demand of any police officer, who shall identify himself or herself as such." *Id.* (emphasis added). Deputy Fitch misinterpreted this law. While Michigan law requires licensees to produce their identification upon the request of an officer *while operating a motor vehicle*, there is no such requirement for persons walking or standing on a public sidewalk. Plaintiff was not operating a motor vehicle when Deputy Fitch asked for his ID; he was simply walking on the sidewalk. There is no Michigan law requiring Plaintiff to produce his ID in this situation, so an arrest for a non-existent "failure to identify" law constitutes an unlawful arrest under Michigan law. *See Carter v. Hamaoui*, 699 F. App'x 519, 529 (6th Cir. 2017) (stating that an officer's reliance on a non-existent law in writing a traffic citation was not reasonable).

Moreover, there was no probable cause to arrest Plaintiff for "failure to identify" because Deputy's Fitch's reasonable suspicion must have been tied to an existing law. *See Heien v. North Carolina*, 574 U.S. 54, 66 (2014). "The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or law—must be *objectively* reasonable." *Id.* It was not objectively reasonable for Deputy Fitch to base his probable cause for arresting Plaintiff on a non-existing "failure to identify" statute. Any reasonable officer employed by the State of Michigan should know that Michigan does not have a law requiring citizens to produce their identification upon any request by an officer—his mistake of law was not objectively reasonable. Deputy Fitch had no probable cause to arrest Plaintiff for "failure to identify."

9

Because Deputy Fitch could not have lawfully arrested Plaintiff for "failure to identify," he instead claims that the arrest was lawful under Michigan's resisting and obstructing statute. *See* Mich. Comp. Laws § 750.81d. In Defendants' motion for summary judgment, they claim that although Deputy Fitch verbally stated that he was arresting Plaintiff for "failure to identify," as long as he had probable cause to arrest Plaintiff for a different crime than the stated crime of arrest, the arrest was lawful. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("[The officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."). In other words, as long as an officer has probable cause to arrest an individual for some crime, the subjective reason the officer makes the arrest is irrelevant. *See generally id.* (abolishing the Ninth Circuit's "closely related" rule, which required the offense establishing probable cause to be "closely related" to the offense the arresting officer verbally identified at the time of the arrest). Thus, Defendants claim that Deputy Fitch lawfully arrested Plaintiff for resisting and obstructing under Michigan law, even though Deputy Fitch did not verbally state that was the reason he arrested Plaintiff.

Michigan's resisting and obstructing statute states, "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know if performing his or her duties is guilty of a felony. . . ." Mich. Comp. Laws § 750.81d(1). Under Section 750.81d, "obstruct" is defined as "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." Deputy Fitch claims that Plaintiff violated this statute because he resisted and obstructed a lawful command when Plaintiff refused to produce his ID. But for the reasons stated above,

Deputy Fitch's commands to Plaintiff to produce his ID were not lawful because there is no Michigan law requiring Plaintiff to do so in that situation. Similarly, Deputy Fitch cannot claim that he had probable cause to believe that Plaintiff violated Section 750.81d because it was unreasonable for him to believe that Plaintiff was resisting and obstructing a lawful command, considering it was unreasonable for Deputy Fitch to believe that Plaintiff had to produce his ID. Therefore, an arrest for violating Michigan's resisting and obstructing statute would also be considered unlawful under the Fourth Amendment.

Finally, Deputy Fitch argues that the arrest was lawful under the City of Manistee's Peace Disturbances Ordinance. *See* Manistee, Mich., Codified Ordinances ch. 662, § .01. This ordinance states, "No person shall . . . [e]ngage in any disturbance, fight or quarrel in a public place." *Id.* at ch. 662, § .01(B)(4).[2] Under the ordinance, this offense is a misdemeanor, punishable by a fine of not more than $500, imprisonment for not more than ninety days, or both. *See id.* at ch. 662 § .99, ch. 202 § .99(A). Deputy Fitch again claims that although he did not verbally assert that he was arresting Plaintiff for disorderly conduct, he had probable cause to believe that Plaintiff violated this ordinance, making an arrest for disorderly conduct lawful. However, there is *at least* a genuine issue of material fact as to whether Deputy Fitch had probable cause to believe that Plaintiff violated this ordinance. Deputy Fitch claims that he had probable cause to believe that Plaintiff had violated this ordinance outside of his presence because he received a report of an individual harassing people and waving a sign by the Vogue Theater, and when he arrived, he observed Plaintiff put a sign in his backpack and Plaintiff confirmed that he had been "publishing his views

---

[2] The ordinance does not define "disturbance."

11

freely" by the theater until he was asked to move (ECF No. 34 at PageID.127). Although these facts are undisputed, there is a question of whether these actions constitute a "disturbance" in violation of the ordinance. Deputy Fitch did not observe Plaintiff harassing anyone, and when he arrived at the scene, Plaintiff was simply standing on a public sidewalk. These facts are not enough to give Deputy Fitch probable cause to believe that Plaintiff engaged in a "disturbance" in violation of the Manistee City Ordinance. There is a genuine dispute of material fact as to whether Plaintiff's arrest for disorderly conduct in violation of Manistee's peace disturbances ordinance was lawful.[3]

Alternatively, Defendants argue that even if Plaintiff's arrest was unlawful, Deputy Fitch is protected by qualified immunity. They argue that the law regarding whether an individual must produce his identification upon the request of an officer is not clearly established.

Qualified immunity is an affirmative defense that shields "government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

---

[3] In Plaintiff's response to Defendants' motion for summary judgment, he asserts that Deputy Fitch did not have the authority to arrest him for a misdemeanor, regardless of what the misdemeanor actually was, because Michigan law prohibits a warrantless arrest of a person for a misdemeanor that was committed outside the presence of the arresting officer. Plaintiff is partially correct, but there are more scenarios that allow for a warrantless arrest for a misdemeanor. Michigan law allows an officer to arrest an individual for a misdemeanor without a warrant in very limited circumstances: (1) if the officer witnessed the individual commit the misdemeanor; (2) if the officer had reasonable cause to believe the individual committed a misdemeanor punishable by at least 92 days imprisonment; (3) if the officer received information broadcast from a recognized police or other governmental radio station or teletype that would give the officer reasonable cause to believe the individual committed misdemeanor punishable at least 92 days imprisonment; or (4) if the officer had reasonable cause to believe the individual committed a misdemeanor on school property. Mich. Comp. Laws § 764.15(1)(a), (d), (f), (n). While none of these scenarios occurred in the present matter, the Manistee City Ordinance permits an officer to arrest a person for violating the ordinance because imprisonment is a possible punishment. *See* Manistee, Mich., Codified Ordinances ch. 662 § .99, ch. 202 § .99(A). Thus, Plaintiff's argument that the arrest was lawful under Mich. Comp. Laws 764.15 is without merit since the offense under the ordinance is an arrestable offense.

(1982)). The defendant "bears the burden of pleading the defense, but the plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). In other words, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Id.* When assessing whether a law enforcement officer is entitled to qualified immunity, the Court must perform a two-prong inquiry: (1) whether the officer violated the plaintiff's constitutional rights, and (2) whether that constitutional right was clearly established. *See Pearson*, 555 U.S. at 232. Law enforcement officers are protected from civil liability under qualified immunity unless they violate a plaintiff's clearly established constitutional rights. *See id.*

There is a genuine dispute of material fact as to whether Deputy Fitch is protected by qualified immunity. As stated above, he violated Plaintiff's Fourth Amendment protections for an unreasonable seizure by unlawfully arresting Plaintiff for "failure to identify" and resisting and obstructing under Michigan law. And there exists a genuine dispute of material fact as to whether Deputy Fitch violated Plaintiff's Fourth Amendment rights for unlawfully arresting Plaintiff for disorderly conduct under the Manistee City ordinance. Thus, there is *at least* a genuine dispute of material fact as to whether Plaintiff's Fourth Amendment rights were violated. If Deputy Fitch did not violate Plaintiff's Fourth Amendment rights for unlawfully arresting him for disorderly conduct, then qualified immunity is irrelevant because there is no civil liability he needs to be protected from. But if he did violate Plaintiff's Fourth Amendment rights, then the Court must move to the second question under a qualified

immunity analysis. Because there exists a dispute of material fact regarding the violation of Plaintiff's Fourth Amendment unlawful seizure rights, the Court will move to the second inquiry: if there was a violation of a constitutional right, was that right clearly established?

Under the second prong of the qualified immunity analysis, Defendants attempt to argue that the law in Michigan is not clearly established regarding whether a person violates Michigan's resisting and obstructing statute when they fail to produce a form of ID upon the request of an officer. Defendants' argument fails for two reasons. First, the law in Michigan is clearly established that individuals do not have to produce their ID to an officer while not in a motor vehicle. *See* Mich. Comp. Laws § 257.311 (requiring individuals to produce their IDs upon the request of an officer *while operating a motor vehicle*). Defendants presented cases that they believe show that Plaintiff's refusal to produce his ID could have constituted a violation of Michigan's resisting and obstructing statute—making the law regarding this question not clearly established—but these cases are unpersuasive. In every case the Defendants presented, there was an underlying offense or reason that would require the individual to produce his ID; the individuals were not simply arrested for failing to produce their identification. For example, in *Combs*, 2013 WL 4670699, the individual in that case was arrested for resisting and obstructing after he failed to provide his ID to the requesting officers. But in *Combs*, the individual—who appeared to be about 16 years old—was walking around the streets of Birmingham with a loaded assault rifle. *Id.* at *1. In Michigan, it is prohibited for individuals under 18 years old to carry firearms, which is why the officers requested to see his ID. *See id.* Thus, when he refused to produce his ID upon the officers' request so they could verify his age to ensure he could carry a firearm, he was arrested for

resisting and obstructing—he was not arrested for simply resisting and obstructing a baseless request to produce identification like Plaintiff Carpenter in the present matter.[4]

Second, Defendants' argument that Deputy Fitch is protected by qualified immunity because the law is not clearly established regarding whether Plaintiff had to produce his ID also fails because the issue is not whether *Michigan* law is clearly established, it is whether the *constitutional* law protecting Plaintiff from an unreasonable seizure is clearly established. It is undoubtedly a violation of a person's Fourth Amendment protection against unreasonable seizures if he is arrested for failing to produce his identification to an officer when there is no law requiring him to do so. *See, e.g., Wallace*, 549 U.S. at 391.

Based on clearly established constitutional law, a reasonable officer employed by the state of Michigan should know that it is an objective violation of a person's Fourth Amendment protection against unreasonable seizures for unlawfully arresting that person for failing to show an officer his ID while walking on the street. Thus, the Court finds that Deputy Fitch cannot be protected by qualified immunity regarding Plaintiff's unlawful arrest claim.

---

[4] The other cases that Defendants use to support their position are also unpersuasive. In *Chesney v. City of Jackson*, 171 F. Supp. 3d 605 (E.D. Mich. 2016), a man not only resisted giving officers his ID, he also resisted going outside with officers after he was caught in a Michigan Secretary of State branch with a firearm, which is a "no weapon zone." Although the man in this case was arrested for resisting and obstructing, this arrest was not for merely refusing to produce his ID. He resisted leaving the "no weapon zone" when he had no right to be there with a weapon. In *Devoe v. Rebant*, No. 05-71863 (E.D. Mich. Feb. 13, 2006), the officers had probable cause to believe a man had committed auto theft. This man was arrested for resisting and obstructing because he not only resisted giving the officers his ID, he also resisted getting into their squad car. Finally, in a recent Sixth Circuit case, *Barrera v. City of Mount Pleasant*, __ F.4th __ (6th Cir. 2021), an officer ran a driver's license plate and discovered that the driver lacked a driver's license. Thus, when the officer pulled over the driver, and the driver resisted when the officer requested that he produce his driver's license, the officer had a valid reason to arrest the driver for resisting and obstructing, because he had a valid reason to request the ID in the first place. Therefore, in none of the cases that Defendants cite was an individual arrested for resisting and obstructing for *merely* refusing to produce his or her identification. There was always an underlying reason or offense that required the officers to review the relevant person's ID.

Deputy Fitch very likely violated Plaintiff's clearly established Fourth Amendment rights, but at the very least, there exists a genuine dispute of material fact as to whether he did so.[5]

## 2. First Amendment

Plaintiff's complaint next pleads a claim of "[a] violation of Plaintiff's First Amendment right to peacefully protest against government action in a public place as applied to the States by the Fourteenth Amendment" (ECF No. 1 at PageID.7). Defendants apparently construe this allegation to plead a First Amendment retaliation claim and move for summary judgment on Plaintiff's First Amendment retaliation claim. However, nowhere in Plaintiff's complaint does it mention a First Amendment retaliation claim, so the Court is unsure why Defendants move for summary judgment on such a claim, considering no claim exists in the first place.

In Plaintiff's response to Defendants' motion for summary judgment, Plaintiff asserts why Defendants should not be entitled to summary judgment on a First Amendment free speech/protest violation claim (ECF No. 36 at PageID.219-24). And in Defendants' reply brief, they argue that Plaintiff is attempting to allege a new First Amendment claim in his response to Defendants' motion for summary judgment because his original complaint only pled a First Amendment retaliation claim (ECF No. 37 at PageID.416). However, Defendants' argument is completely backwards. Plaintiff's complaint alleged a violation of his First Amendment right to protest (*see* ECF No. 1 at PageID.7) (pleading "[a] violation of

---

[5] Although Plaintiff alleges a violation of his Fourth Amendment protection against unreasonable seizures, he does not allege a violation of his Fourth Amendment protection against unreasonable searches. Deputy Fitch claimed that he could search Plaintiff's pockets for his ID without a warrant because of the doctrine of "search incident to an arrest." Notably, Deputy Fitch does not state that his actions were a "search incident to a *lawful* arrest." But because Plaintiff did not plead a violation of his Fourth Amendment right against unreasonable searches, the Court need not address this argument.

Plaintiff's First Amendment right to *peacefully protest. . . .*") (emphasis added). But it did not allege a First Amendment retaliation claim. Thus, the Court finds that Plaintiff's claim regarding a violation of his First Amendment rights to free speech and protest will survive summary judgment (because Defendants never moved for summary judgment on that claim), and there is no need to analyze a First Amendment retaliation claim, considering Plaintiff never alleged such a claim.

### 3. Excessive Force

Plaintiff also alleges that Defendant Fitch used excessive force in arresting Plaintiff in violation of the Fourth Amendment. Individuals have the right to be free from excessive police force. *See Purnell v. City of Akron*, No. 91-4055, 1992 WL 296714, at *3 (6th Cir. 1992). Excessive force claims are analyzed under a Fourth Amendment "reasonableness" standard. *See Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010). Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). To assess objective reasonableness, the Sixth Circuit follows the three-factor test laid out in *Graham. See Estate of Hill v. Miracle*, 853 F.3d 306, 312-13 (6th Cir. 2017). That is, "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 397) (internal quotation marks omitted). The Court finds that there is a genuine dispute of material fact as to whether Plaintiff resisted arrest, so this claim will survive summary judgment.

Under the first *Graham* factor, whether Plaintiff committed a crime is disputed. As stated above, there is a genuine dispute as to whether Plaintiff violated the Manistee City ordinance prohibiting disorderly conduct. If Plaintiff did not commit disorderly conduct, this factor would certainly weigh in his favor. *See Estate of Hill*, 853 F.3d at 313 (finding that the first factor weighed in favor of the plaintiff because he had not committed a crime). But even if Plaintiff committed a "disturbance" that would amount to disorderly conduct under Manistee, Mich., Codified Ordinances ch. 662, § .01, disorderly conduct is not a severe crime. It is a non-violent misdemeanor and was punishable by, at the most, a $500 fine and ninety days imprisonment in county jail. Either way, this factor under the *Graham* test weighs in favor of Plaintiff.

The next two factors—whether Plaintiff posed and immediate threat to the officers or others, and whether Plaintiff actively resisted arrest—however could weigh in favor of either party. Plaintiff argues that he did not pose an immediate threat to anyone because he was simply standing on the street, and he also argues that he did not physically resist arrest. Conversely, Deputy Fitch argues that Plaintiff could have posed a threat to the officers by yelling to passersby that he was being unlawfully arrested, and he also argues that Plaintiff verbally and physically resisted arrest. After reviewing Deputy Fitch's body camera footage the parties' competing arguments, the Court determines that whether Plaintiff posed a threat and whether he resisted arrest are issues that a jury should decide and are not appropriate to decide on summary judgment. Thus, there is a genuine issue of material fact as to whether the amount of force that Deputy Fitch used in arresting Plaintiff was reasonable given the totality of the circumstances.

Further, Deputy Fitch argues that even if he did use excessive force, he is protected by qualified immunity. Deputy Fitch asserts that he did not violate clearly established law when he kicked Plaintiff in the knee, which forced Plaintiff to fall to the ground. In *Minchella v. Bauman*, 72 F. App'x 405, 407-10 (6th Cir. 2003), the Sixth Circuit held that a genuine dispute of material fact existed as to whether the actions of the officers were reasonable when they kicked the plaintiff in the ankle after she refused to be handcuffed and turned to walk away from the officers. In *Minchella*, the Sixth Circuit held that because there was a genuine dispute as to whether the officers' actions were excessive, there was also a dispute as to whether they could be protected by qualified immunity. *Id.* at 409-10. The Court finds the facts in the present matter to be similar, and there exists a genuine dispute of material fact as to whether Deputy Fitch is protected by qualified immunity on the excessive force claim for kicking and breaking Plaintiff's knee.

Moreover, regarding Deputy Fitch's use of force in sitting on top of Plaintiff, he asserts that "[a]s soon as back up arrived, Deputy Fitch de-escalated his force" (ECF No. 37 at PageID.424). However, the body camera footage directly contradicts this statement. Deputy Fitch sat on top of Plaintiff for about four minutes after Plaintiff was handcuffed, sounded to be in physical pain (at that point, his tibia was broken), and other officers arrived at the scene. There exists a genuine dispute of material fact as to whether Deputy Fitch violated clearly established law when he sat on Plaintiff after he had been subdued and backup had arrived. Plaintiff's excessive force claim will survive summary judgment despite Defendants' contention that Deputy Fitch was protected by qualified immunity.

### B. Count II: *Monell* Violation by Defendant Manistee County

In addition to the above three constitutional violations that Plaintiff claims Deputy Fitch committed, he also claims that Manistee County committed a *Monell* violation because the Manistee County Sheriff's Office "had a policy, practice and/or custom of arresting citizens who refused to provide identification to deputy sheriffs even when the arrested citizens were not being lawfully detained" (ECF No. 1 at PageID.7-8). Under *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 663 (1978), a municipality can be held liable for an officer's actions under 42 U.S.C. § 1983 when the officer violated the plaintiff's constitutional rights, and that violation resulted from an official municipal policy or custom.

To hold the municipality liable for an unconstitutional custom or policy under *Monell*, the plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [his] particular injury was incurred due to the execution of that policy." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010) (quoting *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005)). Here, Plaintiff has not met his burden. He has identified what he believes to be an official policy or custom of Manistee County based on the actions of Deputy Fitch, but he has shown no evidence that this "policy" is an official policy or custom of the county.

Under *Monell*, there is an additional way to hold municipalities liable for constitutional violations of their officers under Section 1983: if the municipality was deliberately indifferent in failing to train or supervise the officer. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). In his response to Defendants' motion for summary judgment, Plaintiff argues that the *Monell* claim should not be dismissed because Manistee County is

20

liable on a "failure to train" theory. However, Plaintiff did not allege this theory of liability in his complaint; he only alleged an "unconstitutional policy" theory. Courts may not rewrite complaints to include claims that were never presented. *See Thompson v. Mich. Dep't of Corrs.*, No. 05-40293, 2009 WL 3872148, at *3 (E.D. Mich. Nov. 18, 2009). Because Plaintiff did not assert the "failure to train" theory in his complaint, the Court need not address this argument. Thus, Plaintiff's allegation of a *Monell* violation by Manistee County must be dismissed on summary judgment.

## IV.

The Court finds that genuine questions of material fact remain on Plaintiff's Fourth Amendment unlawful arrest claim, First Amendment violation of free speech/protest claim, and Fourth Amendment excessive force claim. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (ECF No. 33) is **GRANTED** in part and **DENIED** in part. Specifically, it is **GRANTED** for count II, the *Monell* claim against Defendant Manistee County. It is **DENIED** for Count I, the alleged constitutional violations against Defendant Fitch.

**IT IS SO ORDERED.**

Date:  October 8, 2021                    /s/ Paul L. Maloney
                                          Paul L. Maloney
                                          United States District Judge